### SEABOARD AIR-LINE RAILWAY *v.* JACKSON.

1. Where a suit was brought against two railway companies to recover damages for the alleged negligent and tortious killing of the plaintiff's-husband, and the action was demurred to upon the ground that it was multifarious, that there was a misjoinder of parties, and that the acts of negligence charged against each of the defendants were separate and distinct acts of negligence chargeable against each of them separately and not jointly, and the demurrer was overruled, but subsequently and before the trial the name of one of the parties defendant was stricken and the cause dismissed as to that party, and the allegations of negligence against the party thus stricken were eliminated by an amendment to the petition, the overruling of the demurrer would not be ground for reversal of the judgment of the court below, even though the action as stated in the original petition could not be jointly brought against both defendants, and there was, therefore, a misjoinder of parties defendant.
2. Where in such original petition it was alleged that the decedent, being in the employment of one of the railway companies as a brakeman and switchman, was upon the top of a box-car while the same was attached to an engine which was in motion, and that by the too sudden,

violent, and unusual stopping of the car the decedent was hurled from
his position to the ground and upon an adjacent track, where he lay
in a helpless and unconscious condition, and while lying there was
run over and killed by the train of the other railway company which
was being operated negligently and without due caution, in that it was
running at too high a rate of speed and without giving proper signals
of its approach and without having some one on the lookout, it was
competent to amend such petition by striking therefrom one of the
parties defendant and the acts of negligence alleged against the party
so stricken, and to add allegations showing that the decedent, while in
the discharge of his duty, had taken a position on the track upon
which it had been alleged that he was lying, and that he was stand-
ing there for the purpose of signaling an approaching train so as to
protect the train upon which he was employed as a brakeman and
switchman, and that while so standing upon the track, in the discharge
of his duty, he was struck and killed by a train operated by the em-
ployees of the other defendant company which was using the track on
which he was standing, and that the train which struck and killed
him was being operated negligently as alleged in the original declara-
tion; and such an amendment did not add a new cause of action, al-
though it stated other facts showing why the train which ran over and
killed the decedent was being operated negligently. *Harris* v. *Central
R.*, 78 *Ga.* 525 (3 S. E. 355); *City of Columbus* v. *Anglin*, 120 *Ga.* 785
(48 S. E. 318).

3. The petition set forth a cause of action good as against a general
demurrer.

4. The petition setting forth distinctly what were the duties of the de-
cedent at the time when he was killed and the alleged acts of negligence
on the part of the defendant, the court did not err in refusing to strike,
upon demurrer, the allegation of the petition that "at the time plain-
tiff's husband was killed he was at his post of duty."

5. The court did not err in refusing to grant a nonsuit at the conclusion
of the evidence offered by the plaintiff.

APRIL 10, 1912.

Action for damages. Before Judge Ellis. Fulton superior court.
July 1, 1911.

Ruth A. Jackson, by her next friend, brought suit against the
Western & Atlantic Railroad Company and the Seaboard Air-
Line Railway, to recover damages for the tortious homicide of her
husband. In the original petition it was alleged that on the 8th
day of May, 1910, the plaintiff's husband was in the employment
of the Western & Atlantic Railroad Company as a brakeman and
switchman, and was a member of a switching crew on the morning
of the homicide; and that, being at his post of duty on the top of a
freight-train of the Western & Atlantic Railroad Company and in
the discharge of his duties, in consequence of a sudden and violent
stopping of the train he was thrown from the top of the car and in

the fall was stunned and rendered unconscious, and in that position he lay upon the south main line of defendant's track, and being unable to move, a train of the Seaboard Air-Line Railway ran over him, cut off both feet, and in consequence of these injuries he died the next morning. Defects in the brakes and negligence causing the sudden and unusual stopping of the car upon which decedent was riding were set forth in the original petition, as a part of the narrative of the causes by which the decedent was thrown upon the south main line. It was charged that the train of the Seaboard Air-Line Railway was running at a high and reckless rate of speed, about thirty miles an hour, in the railroad yards where railroad hands were at work almost constantly, and across Bellwood crossing, just before it struck the decedent, the engine being at the rear of the train pushing the cars back, without any one on the car to watch out for persons that might be on the track, and that the body of decedent and the dangerous position in which he was lying was in plain view of the agents and employees of the defendant Seaboard Air-Line Railway for a distance of 100 yards, and the agents of the Seaboard Air-Line Railway could have seen or ought to have seen decedent that distance before reaching him, which was in ample time for them to stop the train before it ran over him. The petition was demurred to by the Seaboard Air-Line Railway on the ground that it was multifarious and contained a misjoinder of causes of action and a misjoinder of parties defendant, and that the alleged acts of negligence were separate and not joint; and the defendant demurred specially to the allegation that its servants failed to blow the whistle or ring the bell, on the ground that there was no law requiring it to blow the whistle or ring the bell at the place in question. The demurrer was overruled on each and all the grounds, and the defendant excepted pendente lite. Subsequently the plaintiff amended her petition by striking the paragraphs which contained a narrative of the manner in which the decedent was hurled to the ground from the top of his train, due to an alleged defective "triple valve," and the sudden stopping of the car on which he was riding, and which described the position in which the decedent was lying on the track in an unconscious condition when he was struck; and substituted therefor other paragraphs which, in substance, alleged that on the day first alleged it became necessary for the plaintiff's

husband, in the discharge of his duty, to leave the train on which he was working as brakeman and switchman, for the purpose of flagging an approaching train to keep it from running into the rear of his train, as the latter train was going to stop at or near Bellwood crossing to do some switching, and it was necessary to protect it by flagging the train which was following it; and that as there was a curve in the tracks, he could be better seen by his crew and could better flag the train by standing on or near the south main line, on which he was standing when he was injured; and that while in that position, with his back toward Bellwood crossing, a train of the defendant Seaboard Air-Line Railway came upon him from behind, without giving any warning by whistle, ringing the bell, or otherwise, struck him and ran over him, inflicting the injuries above referred to. By this amendment the Western & Atlantic Railroad Company was stricken as a party defendant, and the cause dismissed as to it. It was further alleged in the amendment that the defendant violated an ordinance of the City of Atlanta, prescribing a speed limit for the running of engines and trains within the city limits and at the place of the homicide. The defendant objected orally to the allowance of this amendment, on the ground that it set forth a new cause of action; and to the court's order allowing the amendment the defendant excepted pendente lite. The defendant then renewed its demurrer to the petition as amended, on the ground that it set forth no cause of action which would entitle the plaintiff to recover against defendant; and demurred specially to the allegation "that at the time plaintiff's husband was killed he was at his post of duty," on the ground that this was the mere conclusion of the pleader. The demurrers were overruled, and defendant excepted pendente lite.

The defendant answered, denying all liability and all of the acts of negligence charged against it; denying also the applicability of the ordinance as fixing the speed limit of trains at the place where the decedent was killed. At the conclusion of the evidence for the plaintiff a motion for a nonsuit was made by the defendant, and was overruled; to which ruling the defendant excepted. The defendant then introduced evidence, and after the close of the evidence, argument of counsel, and the charge of the court, a verdict was rendered by the jury in favor of the plaintiff. The defendant excepted to the final judgment, and assigned error upon each of the rulings before stated.

*Brown & Randolph, W. G. Loving, Moore & Pomeroy,* and *Robert S. Parker,* for plaintiff in error.

*Westmoreland Brothers* and *Tye, Peeples & Jordan,* contra.

BECK, J. (After stating the foregoing facts.)

1-4. The rulings made in the first four headnotes do not require elaboration.

5. The remaining question for determination, and the one principally argued, is whether the court erred in refusing to grant a nonsuit at the conclusion of the evidence introduced in chief by the plaintiff; and under the ruling frequently announced by this court, that question must be answered in the negative if there was any evidence whatever authorizing a finding in favor of the plaintiff. While the evidence to support the petitioner's case is of doubtful sufficiency, it can not be said that the court erred as a matter of law in holding that a nonsuit was not authorized. Taking the evidence most favorable to the plaintiff's cause as true, which must be done in passing upon this motion for a nonsuit, it appears that the plaintiff's husband, who was a flagman and switchman, had taken a position upon the south main line over which a train coming into the city would run; he was facing towards the city for the purpose of watching out for any train that might be approaching on the north main line, that being the line upon which the switching-engine to which he was attached as an employee was then being operated in placing cars upon certain industrial tracks and elsewhere. There is evidence showing that the position on the south main line, on account of a curve in the tracks, was the most feasible position for the flagman to take in order both to keep in sight of his own crew and to signal an approaching engine on the north main line. His back was turned in the direction from whence a train would come on the south main line,—that is, the line upon which he was standing; and from that direction a train did come, which was being pushed with a freight-car in advance. This came swiftly—30 miles an hour—without any signals whatever of its approach. The spot at which the decedent was killed was about 200 yards from a crossing known as Bellwood crossing, and in the railroad yards. The jury would have been authorized to find under the evidence that no signal was given as the train of the defendant company passed over the crossing or approached it. Whether or not under these circumstances the train which ran

over and killed the petitioner's husband was being operated negligently and in disregard of the safety of its own employees and employees of other railways using these yards is a question of fact. No mere rule of law can be applied to the situation so as to enable the court to determine the question of negligence or not upon the part of the defendant company, as a question of law, unless we flatly hold that because of the fact that the train was being operated in the railroad yards the employees of the defendant could operate a train there at any rate of speed which the locomotive was capable of attaining. Both the south and the north main lines were tracks belonging to the Western & Atlantic Railroad Company, but were used, under an arrangement between the two companies, by the Seaboard Air-Line Railway. The decedent was not an employee of the plaintiff in error, but he was not, it is conceded in the brief of counsel for plaintiff in error, a trespasser upon that track. Counsel for plaintiff in error concede that he was a licensee. And if one switchman could be upon a track as a licensee, other licensees sustaining similar relations to other switching crews might, under the exigencies of varying situations, be there; and it can not be said as a matter of law that a train could be run at any rate of speed along that track and trainmen not be negligent in so doing. We can not, of course, say that the train which killed the decedent was actually running (even though going at the rate of 30 miles an hour) at such a rate of speed as to render the operation of the train negligence, but we do say that whether the movement of the train at this rate of speed was negligence was a question of fact, and that question could not be determined on a motion for a nonsuit. We are equally unable to say, as a matter of law, that the decedent could, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence. That, too, was a question of fact for the jury, and the judge properly refused to determine that point on a motion for nonsuit.

It will be observed that we have held that whether the defendant was guilty of negligence or not in running the train at a high rate of speed was a question of fact for decision by the jury, without reference to the ordinance of the City of Atlanta, fixing a maximum rate of speed at which trains might be operated within the city limits. And if that was true, then the judge did not, merely by refusing a nonsuit, necessarily pass upon the question of the reason-

ableness or unreasonableness of that ordinance, and of its applicability to the place at which the homicide occurred. Save by the motion for a nonsuit, the refusal of which we have pointed out might have been based upon other grounds than the violation of the ordinance, the plaintiff in error did not invoke a direct ruling by the court upon the reasonableness or unreasonableness of the ordinance. It was not challenged, when offered in evidence, on the ground that the facts showed that it was not applicable to that particular place, or that, if it was, it was unreasonable. And no charge of the court construing the ordinance appears to have been invoked. Therefore, as it does not appear that the superior court passed upon that question, this court will not undertake to do so.

It follows, from what we have said above, that the court properly refused to grant the nonsuit.

*Judgment affirmed. All the Justices concur.*